Kathia I. Pereira
NV# 8874
M. Edwin Prud'homme
Prud'homme Law Offices
4063 W. Spring Mountain Rd.

Las Vegas, NV 89102

## Unites States District Court
## State of Nevada

Benedikt Negro-Plumpe            )          Case No.: [**Case number**]
                                 )
        Plaintiff                )
                                 )
          vs.                    )
                                 )
        Defendants               )
                                 )
                                 )
                                 )
Robert Okin, Director, Phoenix Office )
                                 )          **COMPLAINT FOR**
USCIS, F. Gerard Heinauer, Director, )
                                 )
Nebraska Service Center, USCIS, Michael )   **DECLARATORY JUDGMENT**
                                 )
Chertoff, Secretary, Dept. of Homeland )
                                 )
Security, Alberto Gonzales, Attorney )
                                 )
General of the United States     )
                                 )

To The Honorable Judge of Said Court:

**INTRODUCTION**:

Comes now Plaintiff Benedikt Negro-Plumpe and through his undersigned counsel, file this complaint, seeking a declaratory judgment and injunction as described below:

1. This is an action for declaratory judgment and injunctive relief that seeks to set aside decisions of the United States Citizenship and Immigration Service's

[**Summary of pleading**] - 1

1  (USCIS) Nebraska Service Center (NSC) because it's decision is unsupported by substantial evidence, they are arbitrary, capricious, and in violation of the applicable laws and regulations of the United States . Furthermore, Plaintiff asks this Court to order the Defendants to issue a new decision favoring the Plaintiff.

2. The specific purpose of this action is to ask this Court to declare unlawful the refusal by the defendants to approve Plaintiff's Petition to classify Benedikt Negro-Plumpe as a lawful permanent resident under the Immigration and Nationality Act 203(b)(1)(A), 8 U.S.C., 204.5 (h). This court has jurisdiction of the subject matter of this action by reason of the Declaratory Judgment Act, 28 U.S.C. 2201, the Administrative Procedures Act, 5 U.S.C. 702; 28 U.S.C. 1361 and INA § 279, 8 U.S.C. 1329.

The authority to issue an employment based immigration visa EB-1(A) under INA §203(b)(1)(A), not specified by any statue to be discretionary, but instead comes directly from 8 U.S.C. §1153(b)(1)(A)  See Spencer Enterprises, Inc v. U.S.A.  345 F. 3d 683 at 692 (9th Cir. 2003), Thus, this Court has jurisdiction to review the USCIS's final decision in this case.  See id.

**JURISDICTION AND VENUE:**

3. This action brought pursuant to the INA, as amended, 8 U.S.C. Sections 1101 *et seq.*; the Administrative Procedure Act, 5 U.S.C. Section 551 *et seq.*; and the Declaratory Judgment Act, 28 U.S.C. Section 2201 *et seq*.

4. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331, 28 U.S.C. Section 136, and 8 U.S.C Section 1329. The relief sought is authorized by the jurisdiction granting statues herein, and by the Declaratory Judgment

[**Summary of pleading**] - 2

Act, 22 U.S.C. Section 2201 *et seq.* and the Administrative Procedure Act, 5 U.S.C. Section 551 *et seq.*

5. Venue is proper in this Court pursuant to 28 U.S.C. 1391(e)(1) and 1391 (e)(2) since the Plaintiff is residing and doing business in this Judicial District, and Defendants have applied their challenged actions, practices, and policies in this Judicial District.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

No Exhaustion of Administrative Remedies is necessary where review procedure is not mandatory, either mandated by statue or agency regulations. *Darby v. Cisneros*, 112 S. Ct 2539(1993); *Bangura v. Hansen*, 434 F 3d. 487, 498-99 (6th Cir.2006); *Alcaraz v. INS*, 384 F.3d 1150, 1160 and n.4 (9th Cir2004), *Noriega-Lopez v. Ashcroft*, 335 F.3d 874,880-882(9th Cir. 2003); *Abboud v. INS*, 140F.3d 843,847 (9th.Cir.1998); *Young v. Reno*, 114 F.3d 879,881-83 (9th Cir. 1997). The Plaintiff has lost his remedies with the Service because the Denial of his Petition is a Final Order. Now his only remedy lies with this Federal District Court.

**THE PARTIES:**

6. Plaintiff, Benedikt Negro-Plumpe in a non-resident alien legally in the U.S. with a P-1 visa. He is presently employed by Cirque du Soleil, as a lead actor in the production, "O".

7. Defendant USCIS is an agency of the federal government within Department of Homeland Security (DHS). The USCIS is the federal agency charged with implementing the INA. 8 U.S.C. 1101 et seq. Pursuant to this authority, the INS adjudicates petitions for immigrant and nonimmigrant status and applications for other protections and benefits provided under the INA, including petitions for alien petitioners having extra ordinary abilities in

[**Summary of pleading**] - 3

the arts and seeks to continue to work in that area and the U.S. will substantially benefit prospectively in the U.S.

8. Plaintiff has no other administrative remedies that will realistically or likely compel a decision in this field. The doctrine of exhaustion requires that the Plaintiff pursue all available administrative remedies required by law or Federal Regulations prior to asking a federal district court for relief. The Plaintiff has pursued and exhausted all available administrative relief and its only remedy now lies with this Federal District Court.

**STATEMENT OF THE CASE:**

9. Under the Immigration and Nationality Act (INA) Section §203(b)(1)(A) as amended an alien qualifies for EB-1 immigrant classification if:

(i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation,

(ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability, and

(iii) the alien's entry into the United States will substantially benefit prospectively the United States.

Title 8, Code of Federal Regulations (8 C.F.R.), § 204.5(h)(2) defines "extraordinary ability" as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor."

Title 8, C.F.R. §204.5(h) states:

(3) A petition for an alien of extraordinary ability must be accompanied by evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise. Such evidence

[**Summary of pleading**] - 4

shall include evidence of a one-time achievement (that is, a major, internationally recognized award) or at least three of the following:

   (i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

   (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognizing national or international experts in their disciplines of fields.

   (iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought.  Such evidence must include the title, date, and author of the material, and any necessary translation;

   (iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of the others in the same or an allied field of specialization for which classification is sought;

   (v) Evidence of the alien's original scientific, artistic, athletic, or business-related contributions of major significance in the field;

   (vi) Evidence of alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

   (vii) Evidence of the display of the alien's work in the field of artistic exhibitions or showcases;

   (viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

   (ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

   (x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

(4) If the above standards do not readily apply to the beneficiary's occupation, the petitioner may submit comparable evidence to establish the beneficiary eligibility. (8 C.F.R. §204.5(h)(4); 56 Fed. Reg. 60897, 60899(Nov. 29, 1991).

The United States Citizenship and Immigration Service (USCIS), formerly the Immigration and Naturalization Service (INS), has stated that the submission of evidence of 3 of the 10 categories may not be dispositive.  It establishes the initial evidence, but such threshold evidence may fall short of proving extraordinary ability and the USCIS may require additional evidence. *Letter, Skerrett, Chief, Immigrant Branch, Adjudications, HQ 204.23-C* (May 20, 1993).  An applicant may also submit "comparable evidence" (8 C.F.R. §204.5(h)(4) if the above standard do not apply. *Yates, Memo, RFE Memo Rescinded & New Guidance Provided, USCIS*, (Feb. 16, 2005).

10.  The Applicant, Petitioner, Benedikt Negro-Plumpe, timely filed the denied Petition on or about April 28th, 2006 with the California Service Center (CSC), a division of the USCIS.  This case was assigned to the Nebraska Service Center(NCS) even though the Petitioner resided and worked in the jurisdiction of the CSC.  The CSC for several years has processed local applications of Cirque de Soleil personnel.

11.    At the time of filing Negro-Plumpe submitted copious documentation as evidence of his meeting the Regulations concerning the EB-1(A) Immigration classification for Aliens meeting the extraordinary ability qualifications in the field of art in more than six of the Service listed categories.  There were numerous non related third party professional attestations that corroborated the submissions of evidence.

12.    The Service in its initial Request for Evidence/Notice with Intent to Deny (RFE/NITD) or in its Denial Decision has not offered any evidence contradicting the attestations and/or other evidence offered.

[**Summary of pleading**] - 6

13. The Service in its Request for Additional Evidence/Notice with Intent to Deny requested the Plaintiff to submit "Evidence that you have performed in a leading or critical role for organizations or establishments that have a distinguished reputation;(Clearly document your role within Cirque du Soleil as a whole and demonstrate how it is leading or a critical within the overall organization… As Cirque employs "more than 600 artists," you must clearly demonstrate how your role is leading or critical and reflects sustained acclaim in the field as a whole.) Senior members of management of Cirque du Soleil responded the Service's request for additional documentation noted as Exhibits 16a, 16b of the Response to the RFE/NITD.

14. In the initial filing and subsequent filings third party professional and leaders in the international world stated in their opinions that Negro-Plumpe is "one of the best of the best", "among the most talented physical theater actors anywhere…That he is about to earn $95,000 a year doing non-verbal stage performance, quite a unique accomplishment:, "He is now playing the role of Pierrot in a production of 'Cirque du Soeil', which is the biggest circus company in the world." All third party affiants have offered biographical information about themselves. Said biographical information is attached to the offerings.  Attached to the publications and articles offered as Exhibits was circulation information.  All CDs offered as evidence were tested and were playable on standard computer equipment before being submitted.

15. The Service has not offered any evidence contradicting  the attestations and/or other evidence offered any evidence contradicting the attestations and other evidence offered.  The Service in its Denial has not offered one Regulation, Service Headquarters' Memo, or case law contradicting the citations offered by the Plaintiff in his Response to the RFE/Intent to Deny.

[**Summary of pleading**] - 7

16.     The Service also requested "Evidence that you have commanded a high salary or other significantly high remuneration for services in relation to others in the field;(Submit additional documentation regarding the wages paid to performers in large-scale productions, including other performers for Cirque du Soleil.)" First, by his contract, and agreement with Cirque, the Petitioner is instructed not to reveal his earnings with other employees.  Cirque would not furnish information demanded by the examiner for the Service concerning wages paid to their employees.  The Petitioner already submitted several wage studies as Exhibits with his other documentation (See A-file).  The wage studies revealed that the Petitioner was at the high end of earnings for show performers.  He submitted documentation as Exhibits that show that he earns more than One Hundred Nine Thousand Dollars a year as a lead actor for Cirque (Exhibits N & O in the Response)(Also Note affirmation letter of Joerg Lemke,Exhibit 20.)

17.    The Service demanded that the Petitioner submit "Evidence of commercial success in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.  This is confidential information of Cirque du Soleil. The commercial success of Cirque du Soleil and its production of "O" are of public record.  The Service often quotes the internet in its review of documentation. Note such information was submitted as Exhibit 17a.  The same information furnished to the Service states that the show had gone on for years, two sellout performances night after night, with the average range of tickets in excess of $150 each.

18.     The Service in its Denial states that "the Petitioner's qualifications to engage in the performing arts are not at issue in this petition.  The issue is limited to whether, through evidence of sustained national or international acclaim, the petitioner is recognized as one of that small percentage who have risen to the very top of the field of performing arts relating to <u>magic and pantomime</u>".  The Denial states that "while the petitioner is a performing artist, he is not an actor." <u>The</u>

[**Summary of pleading**] – 8

1  <u>Plaintiff is not a magician.</u>   He is a highly paid lead actor in a world renounced
2  production in which mime is a part of the role of his act.

4     19.      The question arises as to the ability of the examiner to adjudicate this
5  file.  Is this examiner located "in house" under the direct supervision of a qualified
6  supervisor, or is he/she working outside of the Agency, often in his/her home, with no
7  direct supervision?  Has he/she taken a secure file, the A-file, outside the
8  government facility?  If in fact the file is a secure file how can the privacy of the
9  Petitioner be protected, if it is taken off site?  How can it be established that the
10 file had not been tampered with or is not the complete file?  The Service should prove
11 to the Court that it has the complete A-file with all the submitted documentation.

13    20.      Defendants denied Negro-Plume's petition on the basis that the
14 credentials offered as an accomplished performing artist does not establish that the
15 Petitioner enjoys the sustained national or international acclaim necessary for this
16 restrictive visa classification.  The Defendants stated that "The classification
17 sought is intended for aliens already at the top of their respective fields, rather
18 than for individuals progressing toward the top at some future unspecified
19 time....Review of the comprehensive filing does not support a conclusion that the
20 petitioner, at this stage of his career, is recognized as one of that very small
21 percentage who have risen to the very top of the field."  How has the examiner
22 determined that the Plaintiff is "progressing toward the top at some future
23 unspecified time?"  Documentation submitted as evidence states that Negro-Plumpe is at
24 the top of his field.  He has a leading role in an ongoing world renown play.  He is a
25 top wage earner in his field and management has stated that he can not be replaced in
26 his role for a short time to attend his grandmother's funeral in Germany.  Cirque sets
27 the industry standards. It is the top salary paying circus stage show performance
28 company in the world.  A reading of the complete file including all the exhibits
   offered should reveal to an ordinary prudent person that the Petitioner, Benedikt

[**Summary of pleading**] - 9

Negro-Plump has met the standards to be granted his requested immigration classification. *Church of the Holy Trinity v U.S.*, 143 U.S. 457;12 S.Ct511(Feb 29th, 1892).

22.   In the Denial of Negro-Plumpe's Petition the Defendants cite only one case, *Matter of Treasure Craft of California*, 14 I&N Dec.190.  This is a generic case as to the burden of proof rests solely with the Petitioner.  The Petitioner offered numerous cases on point in its Response to the Defendant's RFE.   Not one of these cases was rebutted by the Defendant. (*Divine Memo,USCIS, Jan. 11, 2006*, *Matter of Chawathe*, a 74254 994, aao, 2005; *U.S. v. Cardozo-Fonseca*, 480 U.S. 421 (1987); *Matter of E.M.*, 20 I & N Dec. 77, 79-80 (Comm 1989).

23.   The Service has affirmed the applications of many Cirque de Soleil applicants as  persons of extraordinary ability in the arts.  A number of these cases were acts that had several partner participants who were not the lead actors (*Matter of ----*, WAC 01 245 53659, CSC (AAO Oct 1, 2002 {Acrobat and member of Cirque}, reported in 8 No.6 Bender's Immigration Bulletin 480, (March 15, 2003); *Matter of-----*, AAO, Oct 8, 2002 {Chinese artist was required to meet only three and not all the criteria set forth in 8 C.F.R. §204.5(h) reported in Interpreter Releases 216-17(Feb 10,2003); Bajo sexton player, *Matter of ----*, No "A"-number given, AAO # 06 2203, March 17, 2004.  These cases are distinguished from an AAO decision, *Matter of-----*, wac 02 065 54507, March 29, 2004 in which the Service stated that the Beneficiary "shared the Stage" with fellow member of the cast and that the "petitioner" does not demonstrate that his performance accounts for or plays a major part in the success and acclaim received by the production" *Mystere*, another major production of Cirque. Evidence has been submitted and not controverted by the Service that Negro-Plumpe opens the show for the audience as the character Eugen.  Throughout the performance he leads the audience from scene to scene, from theme to theme.  He closes the show as he serenades a beautiful young woman from his piano as they sink into the water. Benedikt Negro-Plumpe is on the cover of the program playing the piano as it sinks

[**Summary of pleading**] - 10

under the water. Documentation has been submitted that states this performance alone is one of the highlights of the show.

24. Documentation has been submitted that the Petitioner, on a one-to-one basis, have been interviewed by national newspapers and on national talk shows both in the United States and in Europe.

25. In fact, it should be noted that the Defendant in paragraph 3 of its Denial states that "The record indicates that the alien petitioner desires to enter the United States to continue work as performing artist, primarily as a magician and mime." No place in the Petition does Negro-Plumpe state that he is a performing magician or a mime. The Petitioner and third party affiants address that he is a lead actor in the performance of "O". He does not do magic tricks and mime is part of his acting role. In fact the evidence provided points to the fact that he is one of the greatest mimes in the world and surely one of the highest paid actors who use mime as part of his performance. In *Matter of ------*, WAC 02 065 54507 [previously cited} the CSC examiner comments on the "evidence that the alien has commanded as high salary or other significantly high remunerations for services, in relation to other in the field". Note Exhibits 14a,14b,14c,14d that all speak to earning ratio of actors. Here, all of the evidence provided was consistent and each expert witness pointed to the fact that the Petitioner was a person of extraordinary ability in the arts and has been recognized as one of the "best of the best" in the world.  Officials of Cirque du Soleil submitted statements stating that Negro-Plumpe was not allowed to take some time off to attend the funeral of his grandmother in Germany because there was no other actor available and capable to play his role. The performances of "O" are sold out nightly with tickets ranging between $90 and $160 Dollars.

26. The Service, again and again, comments upon the Petitioner as a magician. There is a recently published AAO case, *Matter of----, WAC 03192 52458( Nov 10,2005,CSC)* in which the appeal was sustained and the petition was approved.   This

[**Summary of pleading**] - 11

was an EB-1 extraordinary ability in the arts case for a magician in which, the petitioner submitted minimal evidence which is not this case.

27.     In *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) the Court held that a government agency must follow its own procedures in reaching administrative decisions, particularly where the rights of individuals are affected. *Church of the Holy Trinity,* previously cited.

28.     In addition to ignoring AAO precedent, Federal case law, prior Headquarters Memos, the *Yates Memo* is totally ignored.  The standard to be met by the Petitioner or applicant is "preponderance of the evidence," which means that the matter asserted is more likely than not to be true.  Filing are not required to demonstrate eligibility beyond a reasonable doubt.  The *Yates Memo* goes on to caution that "denial of a case that ultimately could have been approved can cause significant delay and inconvenience to a customer."  In spite of the guidelines set out in the *Yates Memo*, the RFE/NOID and the Decision ignored large portions of evidence presented by the Applicant in his initial filing.  In addition, the examiner of the Service uses a passing reference to as a "high salary" but ignores the U.S. Department of Labor Occupational Outlook Handbook, or; the U.S. Department of Labor's current Labor Statistics, of which portions relate to the Petitioner's case. The basis upon which the Denial of the visa petition was predicated are without merit, since the position described is clearly one that called for a performer of extraordinary ability in the arts.  The refusal of the Defendants to grant Petition is arbitrary and capricious in that it is contrary to the provisions of 8C.F.R. §204.5(h) and the USCIS's own rulings, both published and non-published.   The Denial of Negro-Plumpe's Petition is an inexplicable departure from established decisions followed both before and after Defendants' Denial of the Petition.

29. Furthermore, the USCIS states that the one or more of the 10 point criterion was not claimed and that the record lacks evidence that the criterion is met. The documentation speaks for itself. Documentation after documentation reflects that more that six or more of the listed criterion was met.

30. Case law and government regulations were met with the submission of the documentation. In the Petitioner's Response to the RFE the Petitioner cited case after case that supported the evidence submitted.

31. The refusal of the USCIS to approve the Petition for the EB-1 immigrant classification on behalf of Negro-Plumpe, as evidence by its Denial, is arbitrary, capricious and illegal in that it constitutes an improper application of relevant statutes, regulations and case law.

Specifically:

a) The USCISs' decision is illegal in that the decision was made against regulatory guidelines and they improperly give limited or no weight to the expert and third party affiants testimony; and

b) The USCISs' decision is arbitrary and capricious in that it deviates from years of administrative practice in which extraordinary ability classification has been approved in circumstances comparable to those presented in this case, and specifically, in that it is inconsistent with numerous other USCIS decisions which have classified entertainers as extraordinary ability performers and considered positions that are less complex than the one offered by the Petitioner and approved those applications.

32. Negro-Plumpe has exhausted his administrative remedies, and is now compelled to seek redress from the Court.

[**Summary of pleading**] - 13

**IRREPARABLE INJURY**

Negro-Plumpe has suffered and will continue to suffer irreparable harm because of the Defendants' challenged decisions, actions, and practices as described in this Complaint. Negro-Plumpe will suffer harm if his occupancy of this positions prohibited since his career may be disrupted at great personal and professional costs and inconvenience.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

a. Issue a judgement declaring the denial of the petition EB-1, extraordinary ability in the arts immigrant petition classification to be unsupported by evidence of record, arbitrary, capricious, illegal and contrary to applicable law and regulation;

b. Issue preliminary and permanent injunctions enjoining further implementation and enforcement of Defendants' challenged practices, policies and regulations described throughout this Complaint;

c. Declare that the denial of the visa petition under INA §203(b)(1)(A) void.

d. Enjoin Defendants to approve the Petition appropriately filed under the INA and it's implementing Regulations, to the date of filing;

e. Award Plaintiff it costs, attorney's fees and expenses of this litigation pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. §2412(d) & 5 U.S.C. §504 et seq; and

f. Order such other further relief as this Court deems just and proper.

Wherefore, Plaintiff request judgment on his behalf declaring unlawful the denial by Defendants of Plaintiff's Petition ; and for such other relief the Court may deem proper and appropriate.

Respectfully submitted,

Attorneys for Plaintiff

Prud'homme Law Offices

Kathia I. Pereira, of Counsel

NV Bar # 8874

M. Edwin Prud'homme  TX 16363000

Prud'homme Law Offices

4063 Spring Mountain Rd

Las Vegas, NV 89102

Dated this 20th day of June, 2007

[**Summary of pleading**] - 15

<u>Exhibits</u>

NEGRO-PLUMPE, Benedikt

A. Original Attorney filing letter to Christina Poulos, 4/12/06

B. Request for Evidence, 11/20/06

C. Response to Request for Evidence, 2/06/07

D. Yates Memo, USBCIS Headquarters, 2/15/05

E. USBCIS Decision, 4/11/07

F. (i) INA '203(b)(1); (ii) 8 U.S.C. '1153(B)(1)(A); 8 CFR 204.5(h)(2)

G. Chart of Submitted Evidence (24 Sections)

   a. Evidence Section 1 - 5

   b. Evidence Section 5 - 10

   c. Evidence Section 11 – 15 (Part 1 & 2)

   d. Evidence Section 16 - 20

   e. Evidence Section 21 - 24